(127 So. 815)

## SMITH v. SMITH et al.
### 7 Div. 935.

Supreme Court of Alabama.
April 10, 1930.

Culli, Hunt & Culli, of Gadsden, for appellant.

J. M. Miller, of Gadsden, for appellee.

GARDNER, J.

Appellee, George Smith, one of the heirs at law of Hardy L. and Amanda Smith, filed this bill for a sale of 160 acres of land for division among the heirs as joint owners thereof. Andrew J. Smith is a grandson of Hardy L. and Amanda Smith, and asserts title in himself by virtue of a deed to this land executed to him by Amanda Smith on October 17, 1918, and filed for record October 19, 1918. Prior to the execution of this deed, the land here involved had been duly set aside by proceedings in the probate court to Amanda Smith, the widow of Hardy L. Smith, who died in July, 1917, and vesting in said widow absolute title thereto. This was so determined on last appeal, and is not now controverted. Smith v. Smith, 216 Ala. 570, 114 So. 192. On a previous appeal, consideration of any question on the merits was not reached. Smith v. Smith, 212 Ala. 132, 101 So. 903.

Complainant attacks the validity of the deed to Andrew J. Smith upon the grounds of unsoundness of mind of the grantor and undue influence executed over her by the grantee. The question of mental incapacity is here abandoned, and properly so, as all disinterested witnesses, including the family physician, testify to the soundness and normal condition of the mind of the grantor, Amanda Smith, at the time of the execution of the deed. It may be well to here add that the deed reserved to the grantor a life estate.

■ Upon the merits of the case, therefore, the charge of undue influence is the only matter left for determination. Andrew J. Smith, the grantee, is about 34 years of age, and had lived with his grandparents practically all of his life, and, upon the death of his grandfather, the grandmother, the grantor, moved into the house with him, and was cared for by him and his wife to the time of the grantor's death in April, 1920. This land was all that was left the widow, and a small pension, but, after the death of Hardy L. Smith, the little business which the widow had to be attended to was looked after by the grantee, her grandson.

Appellees insist, therefore, that confidential relations existed between the grantor and grantee so as to shift to the latter the burden of exculpating himself from the charge of exerting undue influence upon the former, citing Kyle v. Perdue, 95 Ala. 579, 10 So. 103. But without regard to this question and wherever the burden of proof may be placed, we cannot escape the conclusion that the execution of the deed was not only the free and voluntary act of the grantor, but that it was also in accord with the wishes of the grandfather, who originally owned the property. A year previous, the grandmother had signed a paper expressing her desire that their grandson be given a substantial sum out of the estate in the presence of four disinterested neighbors who witnessed the same. Some of these witnesses state that at that time she told them her husband had intended to make such arrangement in his lifetime, but failed to do so. Other disinterested witnesses testify to having heard both grandparents state they wanted Andrew J. to have what they had at their death for taking care of them. W. J. Alford was a very close neighbor; the lands adjoined. He appears to be wholly without interest in the result of this case. His testimony shows that the grantor confided greatly in him as to these matters, and at her request he went to see about having the homestead set aside as well as having the preparation of the deed, and he further testifies she spoke to him about procuring an officer before whom she could sign. The justice of the peace, A. M. Sims, who took the acknowledgment, came in response to a telephone call which he thought was from Andrew J. While he did not read over the deed, in answer to his question, the grantor said she knew what she was signing. He further testified: "Both Andrew and Amanda Smith told me that she wanted to make a deed to Andrew."

■ True, Amanda Smith was 78 years of age when she died in 1920, and was therefore something over 76 when the deed was executed, but we think it clear her mind was entirely normal, her sickness being such as to affect her feet and limbs, but not her mental condition. She died in 1920 from the effects of the "flu," so her physician states. There was nothing about the entire matter secret or concealed, and the deed was promptly recorded. Nothing in the record indicates any effort whatever on the part of the grantee to exercise any undue influence or any improper conduct on his part. The testimony of wholly disinterested witnesses is in refutation of the charge and as pointing to the execution of this deed as the culmination of the desire of the grantor, often expressed to her neighbors, and as her free and voluntary act. As said by this court in Harris v. Bowles, 208 Ala. 545, 94 So. 757, 763, it is not influence, but undue influence, that is charged, and that such influence resulting from affection only is not undue influence condemned by the law. It must be such "as dominates the grantor's will and coerces it to serve the will of another in the act of conveying." The grantee had doubtless throughout the years proven himself a dutiful grandson, and in their latter years tenderly cared for his grandparents. The influence of their affection for him will not alone suffice to set aside the conveyance, but to that end the influence exerted must be such as to amount to controlling mental restraint and coercion, destroying free agency of the grantor. This record, however, discloses testimony of a number of disinterested witnesses that these grandparents wanted Andrew J. to have this property and each so intended it should be so.

■ The courts must be careful that in cases of this character they do not destroy the right of free disposition of property. As said in Stroup v. Austin, 180 Ala. 240, 60 So. 879, 880: "Courts of equity will be astute to discover the signs of fraud, imposition, and unfair dealing, and eager to thwart their evil ends. But in doing so they must be extremely careful not to interfere with that right of free disposal which inheres in the ownership of property, and not to defeat the uncoerced wishes of its owner." See, also, Robinson v. Griffin, 173 Ala. 372, 56 So. 124.

Appellees lay much stress upon Kyle v. Perdue, supra, which we have re-examined in the light of argument of counsel, but we think the facts are so widely variant from those here presented as to render the decision of little value on this appeal, save of course for the legal principles therein announced, with which we are in entire accord.

We forego further discussion. A most careful reading of the evidence here presented is persuasive to our minds that the execution of the deed here assailed was the free and voluntary act of the grantor and that the same is valid and should be upheld.

The decree of the learned chancellor is laid in error, and must be reversed, and one will

be here rendered dismissing the bill. It is so ordered.

Reversed and rendered.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.