SHORES, Justice.
This case originated following the filing of a petition for the probate of the last will and testament of Mary Louise Fenley.[1] Probate of the estate was removed to circuit court when three of Mrs. Fenley’s beneficiaries filed a petition to reclaim certain assets of the estate.
Those three petitioners (hereinafter “plaintiffs”) — Helen Jackson, Edna Alma Simpson, and William D. Fenley — are all children of Mrs. Fenley. Defendants Doris Marie Weiland and Bobby Harold Fenley are also children of Mrs. Fenley. The remaining defendants are grandchildren and heirs of Mrs. Fenley. It is the plaintiffs’ contention that Mrs. Fenley was of unsound mind and without sufficient mental capacity to understand the nature and consequences of certain business transactions by which she disposed of a significant portion of her assets, and, therefore, that these assets should be reclaimed by the estate. Furthermore, they allege that due to Mrs. Fenley’s weakened mental state, Doris Marie Weiland, another of Mrs. Fen-ley’s daughters, was able to exercise undue influence over Mrs. Fenley, thereby causing Mrs. Fenley to relinquish control of these assets to Mrs. Weiland. The assets in question are a 39-acre farm and a number of certificates of deposit that were held jointly in the names of Mrs. Fenley and each of her children. After a hearing at which ore tenus evidence was presented, judgment was entered against the plaintiffs. We affirm.
The testimony in this case was conflicting on the issues of mental capacity and undue influence, but the background facts are clear. From 1935 until January 1985, Mrs. Fenley lived in her own home on her 39-acre farm in Madison County, Alabama. In January 1985, because her health was failing, Mrs. Fenley went to live with a daughter, Mrs. Weiland. To accommodate Mrs. Fenley’s desire for a place of her own, Mrs. Weiland bought a trailer for her mother and parked it in her back yard.
In the spring of 1985, Mrs. Fenley cashed her certificates of deposit, and, at approximately the same time, she requested that her banker, Mike Magnusson, notarize her signature on a note stating that she cashed the certificate of deposit herself. Magnus-son testified that he talked with Mrs. Fen-ley on that occasion, and that she knew what she was doing when she signed the statement. He further stated that she said she wanted the cash to support herself and felt the notarization necessary so that her children would not doubt that she cashed the certificates of deposit herself.
Later, in June 1985, Mrs. Fenley deeded the 39-acre farm to Mrs. Weiland, and Magnusson notarized her signature on the deed. Concerning that transaction, he testified that Mrs. Fenley was aware that she was signing a deed conveying her farm to Mrs. Weiland. He stated that he and another bank employee discussed the transaction with Mrs. Fenley for approximately five to ten minutes and that, after the conversation, they were confident that Mrs. Fenley was acting of her own free will. Magnusson testified that Mrs. Fenley wanted Mrs. Weiland to have the farm because Mrs. Weiland had taken care of her in her old age.
It was Magnusson’s opinion that there was no change in Mrs. Fenley’s mental alacrity in the last five years of her life. His assessment of Mrs. Fenley’s mental state and competency was based on a 35-to 37-year acquaintance with her and on *1343 his regular contact with her over the last five years of her life.
In addition to Magnusson’s testimony, there was testimony by various relatives and friends who stated that Mrs. Fenley maintained her independence and mental competence until her death.
The defendants, to the contrary, testified that Mrs. Fenley was often confused, forgetful, and susceptible to suggestion from other people. In other words, on the issues central to the case, mental competence and undue influence, the evidence was in sharp dispute, presenting a classic case for the application of the ore tenus rule. The trial court denied the relief sought, and entered the following order, inter alia:
“[U]pon the question of mental capacity, the law presumes everyone to be sane until the contrary is proved. It is unsoundness of mind and incapacity to understand the business transacted, as con-tradistinguished from mere weakness, which must be proved in order to avoid a conveyance. Harris v. Bowles, 208 Ala. 545, 94 So. 757 [(1922)]_ Likewise, advanced age ... is not sufficient to invalidate a conveyance unless the grant- or’s mind was so impaired as to render her incapable of acting intelligently and voluntarily in the conveyancing. Lee v. Menefield, 249 Ala. 407, 31 So.2d 581 [(1947)]....
“With respect to the claim of undue influence ... it is always presumed, pri-ma facie that in transactions between the parent and child, the parent is the dominant party and that they are free from undue influence. Hassell v. Hassell, 201 Ala. 190, 77 So. 716 [ (1917) ]. Therefore the burden is on the complainants to show that such condition has been reversed in order for any presumptions of undue influence to arise. Powell v. Powell, 285 Ala. 230, 231 So.2d 103 [(1970)].”
Based upon his application of the law to the facts, Circuit Judge Banks made the following findings:
“After considering the evidence presented on the subject of mental capacity of Marie Louise Finley [sic], this Court concludes that she was not of unsound mind and that she did have sufficient mental capacity to understand the nature and consequences of what she did in executing the deed and in cashing the certificates of deposit....
“The evidence in this case does not support a finding that the natural order has been reversed and that Doris Marie Weiland was dominating her mother. To the contrary, it appears that Marie Louise Finley was the dominant party in transactions with all of her children. Even if the natural order had been reversed, this Court finds no evidence that there was undue influence exerted on Marie Louise Finley by the defendant, Doris Marie Weiland. To the contrary, it appears that she sought and received the independent advice of her banker, Mike Magnusson, before executing the deed in question and that she informed him of the reasons for cashing the certificates of deposit. That reason appears to be to reimburse Doris Marie Weiland for expenses incurred in relocating a house trailer to be used by Marie Louise Finley.”
The longstanding rule of law has been that when a trial court makes findings of fact based on evidence presented ore tenus, and the testimony is conflicting, every presumption should be indulged in favor of the trial court’s findings, and that a judgment based on those findings will not be disturbed unless it is palpably wrong. Gulledge v. Frosty Land Foods International, Inc., 414 So.2d 60 (Ala.1982). Consequently, because we find the trial court’s findings to be clearly supported by the evidence, we affirm its judgment.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.

. Mrs. Fenley’s name appears in the record both as "Mary" and "Marie” and as "Finley” and “Fenley.” .